THE LAW OFFICE OF LLOYD LONG, PLLC
BY: LLOYD LONG, III, ESQ.
Identification No. 92934
1845 Walnut St., 25th Floor
Philadelphia, PA 19103
(215) 666-0381

_____

|  |  |  |
|---|---|---|
| | : | |
| UNITED STATES | : | |
| | : | |
| | : | UNITED STATES DISTRICT COURT |
| v. | : | FOR THE EASTERN DISTRICT |
| | : | OF PENNSYLVANIA |
| | : | |
| JESSE M. COHEN | : | NO. 22-206 |
| | : | |
| _____ | : | |

### Defendant Jesse Cohen's Sentencing Memorandum

I. PRELIMINARY STATEMENT

Jesse Cohen is a 42-year-old without prior contact with the criminal justice system. That is hardly surprising: he spent nearly two decades as a successful attorney. He is highly thought of in the profession as a number of the attached letters demonstrate. Similarly, he is a kind person: he volunteers his time with Big Brothers Big Sisters, where he mentored a young man who has endured significant difficulties. The first attached letter from the Salim family in Los Angeles describes how Jesse's mentorship has turned the child's life around.

Mr. Cohen, however, faces sentencing for reasons that are both shocking and highly out of character. He took part in the theft of hundreds of thousands of dollars from his employer in concert with his co-defendant, Scott Diamond (who was a partner at the firm that employed Jesse). Nothing in this memorandum seeks to undercut these facts.

There is, however, more to the story. Mr. Cohen immediately cooperated with authorities against Diamond. He provided the government with extensive

1

information that it deemed "enormously helpful" in its 5K1.1 motion seeking a downward departure on his behalf. Just as importantly, he allowed the recording of conversations with Diamond; during these phone calls, Diamond implicated himself. And he began repaying the firm immediately upon discovery of the theft.

Irrespective of his lack of a prior criminal record and the exceptionally low likelihood of further criminal activity, Mr. Cohen accepts full responsibility for his conduct and does not seek to defend it in any way. He has never blamed his conduct on others, and understands that punishment is deserved.

Finally, Mr. Cohen feels genuine remorse over his illegal behavior. Because of the nature of allocution, this sentencing memorandum will only include this assertion; the expression of remorse will be left to Mr. Cohen prior to sentence being imposed.

II. BACKGROUND

The defense does not dispute the factual recitation contained in the Background section of the pre-sentencing report.

III. SENTENCING CALCULATION

The defense concurs with the Sentencing Guidelines calculation in the Pre-Sentence Report ("PSR") in total.

IV. ANALYSIS OF SENTENCING FACTORS UNDER 18 U.S.C. §3553 (a)

Under United States v Booker, 543 U.S. 220, 245-46 (2005), the sentencing guidelines are not mandatory. The guideline range is merely one of a number of

sentencing factors set forth in 18 U.S.C. §3553(a) that must be considered. A District Court's primary obligation is to choose a sentence in light of all the statutory factors in the context of a defendant's particular case. See Kimbrough v. United States, 128 S. Ct. 558 (2007); Gall v. United States, 128 S. Ct. 586 (2007). One of these factors is the history and characteristics of the defendant. Id.

Though he is in many ways, it is not required that Mr. Cohen be either unique or extraordinary in order to justify a variance below the sentencing guidelines range: "We reject…an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range." Id. at 595. Kimbrough and Gall instruct this Court to consider Mr. Cohen's particular history and circumstances because of its unique position. The Supreme Court stated in Kimbrough, "[t]he sentencing judge, on the other hand, has 'greater familiarity with . . . the individual case and the individual defendant before him than the Commission or the appeals court." 128 S. Ct. at 574 (quoting United States v. Rita, 127 S. Ct. 2456, 2469 (2007) (recognizing the importance of an individualized determination of the appropriateness of a sentence).

The sentencing factors set forth in 18 U.S.C. §3553(a) include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted

3

sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

1. **The nature and circumstances of the offense and the history and characteristics of the defendant**

*a. The nature and circumstances of the offense*

The defense does not dispute the PSR's representations and averments about the nature and circumstances of the offense.  Mr. Cohen stole money to which he had no claim in order to fund his lifestyle and to self-treat the feelings of emptiness he felt as a result of depression.

Mr. Cohen knew what he was doing was wrong, and had multiple avenues available that would have either avoided or lessened the amount in question. His decision to take up Diamond's offer in the first place, and to not avail himself of opportunities to get out earlier, are his responsibility alone. But he did more than most in her circumstances do: he implicated himself unconditionally and cooperated extensively with law enforcement once the ruse was discovered.

*b. The history and characteristics of the defendant*

Mr. Cohen grew up in a supportive family that remains so despite this case. He has struggled extensively with both depression and certain medical afflictions that are documented in both the presentence report and attached letters from his treating physician and psychologist. He is undergoing mental health treatment to his benefit, and will continue to do so.

While unmarried and childless, Mr. Cohen is deeply devoted to family and

friends, as they are to him. The degree of his remorse for engaging in this activity is only equaled by the guilt he feels for letting them down. To their credit, his family continues to stand by his side, and provides a strong support system for Mr. Cohen.

Mr. Cohen will allocute prior to sentence being imposed and express to the Court the degree to which he regrets his illegal activity. He knows full well that his poor decisions have placed him in this position, and will explain why he made those decisions and how it has impacted those who employed him, as well as those who love him.

There is precedent for allowing a significant downward variance in cases where the defendant sincerely expresses remorse. United States v. Howe, 543 F.3d 128 (3d Cir. 2008). In Howe, a white-collar defendant defrauded the U.S. military and attempted to cover up his fraud by repeated deception over two years. He went to trial, was convicted, and received a probationary sentence despite a guidelines range of 18 to 24 months' imprisonment. The Third Circuit validated the proper exercise of discretion by the District Court in Howe despite the District Court's view that the conduct was extraordinarily serious based upon the its articulation of relevant 3553 factors. The Court relied on the defendant's remorse as an important factor, emphasizing that the remorse need not be extraordinary and that real remorse is frequently absent in white-collar matters. Id. at 138; see also United States v. Tomko, 562 F.3d 558 (3d Cir. 2009) (no an abuse of discretion when the guidelines called for 12-18 months in a $250,000.00 tax evasion case).

Moreover, the acceptance of responsibility here is not that which is usual and customary in these proceedings. In most cases, a reduction totaling three points for Acceptance of Responsibility under USSG § 3E1.1(a&b) involve situations where a defendant agrees to plead guilty at a reasonably early stage. As detailed in the

5

government's downward departure motion and sentencing memorandum, Mr. Cohen not only admitted to his conduct right away, but he cooperated extensively with the government immediately and provided it with significant assistance. As the presentence report notes, he agreed to the suspension of his law license well before it was required, and has been cooperating with the Pennsylvania Disciplinary Board's investigation and proceedings against him. He began repaying the firm very soon after it discovered the money had been stolen, and the full balance of money stolen between Mr. Cohen and Diamond is now satisfied.

2. **The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

Mr. Cohen committed a serious crime. Upon discovery, he cooperated with the government by confirming the evidence it had gathered against him and cooperating against his codefendant. He agreed to be charged by information, has never debated his guilt in these proceedings or the court of public opinion. There is no doubt that the sentence imposed will reflect the seriousness of the offense, but the defense asks this Court to consider Mr. Cohen's recognition of the harm imposed by his conduct, as well as his genuine remorse, in calculating a sentence. The defense also asks this Court to consider Mr. Cohen's respect for the law based on his cooperation with law enforcement.

3. **The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.**

The defense submits that a sentence of probation is adequate deterrence and will protect the public from further crimes. This would be a departure from the

applicable guidelines, but is warranted for these circumstances in which the defendant has cooperated and is truly remorseful.

Moreover, Mr. Cohen's life is forever changed. The time he spent pursuing education and his future prospects as an attorney are now significantly diminished. Irrespective of his prior accomplishments, he will always be a felon who stole from the law firm that employed him. He will carry that mark forever, and that is significant punishment. Under the circumstances, a sentence of probation is adequate and appropriate general and specific deterrence under the circumstances of this case.

4. **The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

Mr. Cohen needs no significant education or vocational training, but he does suffer from medical conditions that would be difficult to deal with in a prison setting. As addressed in both the PSI and the attached letter from his treating physician, Mr. Cohen's medical problems are problematic. Prison is a far less than ideal environment for the required treatment.

5. **The guidelines and policy statements issued by the Sentencing Commission and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

Mr. Cohen will receive a substantial variance from the Sentencing Guidelines if a probationary sentence is imposed. That variance is warranted based on his cooperation, accomplishments, and remorse.

## V. CONCLUSION

Mr. Cohen is a decent and otherwise successful individual who made terrible decisions for which he is genuinely sorry. A full view of who he is and how he conducted himself after the worst decisions of his life reveal a man who has learned his lesson. A five year term of probation is appropriate.


Respectfully submitted,


_____/s/ Lloyd Long III_____
Lloyd Long III, Esq.
Attorney for Jesse Cohen

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Jesse Cohen's Sentencing

Memorandum has been served upon the following by email:

AUSA Louis Lappen


_____/s/ Lloyd Long III_____
Lloyd Long III, Esq.
Attorney for Jesse Cohen

DATE: January 11, 2023

**From:** **Zoi F** bijansalimfamily@gmail.com
**Subject:** Jesse Cohen
**Date:** August 30, 2022 at 10:32 PM
**To:** Long@longdefense.com, ebrotman@ellenbrotmanlaw.com

ZF

The Honorable Anita B. Brody
7613 US Courthouse
601 Market Steet
Philadelphia PA 19106
Courtroom 7-B

   We are writing you about Jesse Cohen. He is and has been an incredible life changing support and mentor to our son and family. Eric our son and Jesse met through Jewish Big Brothers Los Angeles at a time when Eric was really struggling. Our family has been through alot both kids have had to endure one parent battling cancer and the other who has struggled with multiple illnesses that led to hospital stays and surgeries. Eric during our family health struggles developed depression and anxiety. He didn't want to get out of bed and was not interested in going to school. When Jesse came into Eric's life immediately Eric connected with Jesse and Eric started to feel like himself again. Jesse really takes time to talk with Eric and take him on fun outings. He has played a crucial part in our weekly Shabbat dinners and bringing back the joy to our home.  Erics grades have improved, he looks forward to going to school, and looks forward to spending time with Jesse. Jesse has spent  Birthdays, Thanksgiving, and Passover with our family and has made them extra special. Jesse is caring, empathetic, and goes out of his way to help out in any way he can. We are so grateful Jesse has been in our lives.
Sincerely,
The Salim family - Zoi, Ella, Eric, and Bijan

Craig R. Tractenberg, Esq.
Anna P. Tractenberg
249 Ithan Creek Road
Villanova, PA 19085

October 28, 2022

Honorable Anita Brody
United States Court House
601 Market Street
Philadelphia, PA 19102

c/o counsel and the AUSA.

Re: Sentencing of Jesse Cohen

Dear Judge Brody:

We are writing in support of leniency in Jesse's sentencing.

We met Jesse through family friends when he was in high school. He was friends with our boys, who were younger and they looked up to him. We were excited when he decided to attend law school. We thought that he had the personality, maturity and character for the profession.

I ran into him frequently as a lawyer in Philadelphia as he worked in the same building as I did and occasionally I would see him in a courthouse or at lunch. We sometimes exchanged lawyer experiences and I observed that he was busy with his practice. When I last saw him, he told me he was starting something new in California.

We were shocked to learn of his crime from the Legal Intelligencer. Anna and I felt as though we should write because his crime seems so out of character with the person that we knew and trusted with our children. He was generous with his time and attention. We can't help but believe that he was led astray. We cannot explain his lapse in judgment because it is so out of character from the Jesse that we knew.

We look at this as a crime committed by a good person who inexplicitly did a bad thing. We appreciate the gravity of his offense and the need to enforce the obligations and expectations of the profession. We do not believe that incarceration will benefit those involved. It will impair his ability to complete restitution and that professional licensing of the bar association can address the damage to the profession and the required message of deterrence. We hope that Jesse has demonstrated the remorse necessary to earn leniency in his sentencing.

We hope the promise we saw of him contributing to society as a lawyer can be fulfilled in the future in some material way, and that the sentencing will not impede his opportunity to turn his life around and to complete restitution.

Very truly yours,

Craig Tractenberg

Anna Tractenberg

2

Date: 8/22/22

The Honorable Anita B. Brody
7613 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106
Courtroom 7-B

RE: Character Letter for Jesse Cohen

Dear Honorable Anita B. Brody,

My name is Brian Drach and I am an attorney. I have been requested to provide a character letter for Mr. Jesse Cohen. I have worked with Jesse Cohen in a professional capacity in the past (since ended); however, I have no knowledge of the facts or circumstances surrounding this matter or the allegations against Mr. Cohen, nor have I witnessed nor heard of any wrongdoing on part of Mr. Cohen during the course of our prior, professional relationship. Please consider the substance of this letter as a personal opinion of Mr. Cohen's character based on my personal relationship with Mr. Cohen.

From the moment I met Mr. Cohen, he was nothing but cordial, professional, helpful and honest. During the course of our professional relationship, Mr. Cohen assisted in educating me about litigation and the practice of subrogation. Mr. Cohen handled all cases in a professional, diligent, and honest manner and his clients truly respected him for it. He did not pick and choose cases, but rather focused on helping the client (or insured) seek a fair remedy for their injuries. No case was too big or too small. If someone needed help, Mr. Cohen would find a way, and would remain in constant contact with his clients to ensure their minds were at ease knowing their case was in good hands. Not once did I hear of any wrongdoing on part of Mr. Cohen, nor was I aware of any allegations against him. In fact, a number of clients and insurance representatives thanked him for his diligence and hard work.

Aside from previously working with Mr. Cohen in a professional capacity, I came to know Mr. Cohen on a personal level. On a personal level, Mr. Cohen is a hardworking, understanding, and compassionate person. While many attorneys are extremely busy and place philanthropy/volunteering on the backburner, Mr. Cohen has always found a way to get involved, most recently participating in his local "big brother/big sister" program. During my time knowing Mr. Cohen, he has always dedicated time to his family and friends and would plan days full of activities when his nephew would come to town. And, in speaking with Mr. Cohen, no question was ever a "dumb" question, whether professional or personal. Mr. Cohen is a born educator and would handle all questions with patience and understanding.

Ultimately, I'd respectfully ask the court to consider leniency in the disposition of this matter and to consider the adverse/harmful impact that jail time may have on him, his family, and members of the community that rely on him, when making a determination.

Sincerely,

Brian Drach

# ⚖ EDELSTEIN LAW, LLP

ATTORNEYS AND COUNSELORS AT LAW

JAY L. EDELSTEIN*
JEdelstein@Edelsteinlaw.com

GARY J. BRASCETTA*
GBrascetta@Edelsteinlaw.com

230 S. BROAD STREET
Suite 900
PHILADELPHIA, PA 19102
(215) 893-9311
FAX (215) 893-9310
NEW JERSEY 856-809-3150
WWW.EDELSTEINLAW.COM

GEORGE B. CODDING**
GCodding@Edelsteinlaw.com

JEREMY W. HOUGH*
JHough@Edelsteinlaw.com

_____
*MEMBER OF PA & NJ BAR
**MEMBER OF PA, NJ & DE BAR

Super Lawyers
2013~2014~2017~2018
2019~2020~2021~2022

August 2, 2022

Honorable Anita B. Brody
7613 US Courthouse
Courtroom 7-B
601 Market Street
Philadelphia, PA 19106
long@longdefense.com
ebrotman@ellenbrotmanlaw.com

> RE:   Character Letter for Jesse Cohen

Dear Judge Brody:

Writing this letter to you brings back many memories of trials in Montgomery County, growing up in Montgomery County, and my father, Edward L Edelstein, speaking fondly of you. I hope this letter finds you well.

I have known Jesse Cohen for approximately 15 to 20 years. He interviewed with me quite some time ago and was in my employ for approximately three years. As associates go, he was the best. He is a smart man who knows the law and knows how to communicate that fact. He is the one associate that has left my firm that "got away". The day he resigned was a sad one for me and my wife.

Unfortunately, we find ourselves in this position of having to write a character letter for a man that for as long as I have known him has shown nothing but character. I do not know much, if anything, about the allegations, charges and plea. I know only of what I read in the Legal Intelligencer and other local publications. Judge, I have been an attorney going on 43 years. My father practiced for 55 years and my grandfather, Nathan Edelstein practiced for 75 years. I know character when I see it and I come from a family of men of character. I am also proud to


SUSTAIN
REALTY

August 30, 2022

<u>Via email</u>
The Honorable Anita B. Brody
United States District Court
7613 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106
Courtroom 7-B

**Re: Jesse M. Cohen, Esq.**

Dear Judge Brody:

Please accept this letter in support of Jesse M. Cohen as you consider his sentence in the case before you. Jesse has been my close friend for nearly two decades, during which time I have been honored to be invited into his family to share holidays, celebrations, challenges and occasional sorrows. Jesse and his family are deeply rooted in Philadelphia and the support and guidance that he has offered to me, my son and his mother were significant factors in our decision to build our family in a place where we otherwise would have no immediate relatives or other support.

Jesse and I originally met during a political campaign and since that meeting he has continued to display a level of civic engagement that I find remarkable. Until he recently moved away from Philadelphia during COVID, he continued to actively participate in the political life of the City and the Commonwealth, always seeking to promote candidates that he felt would promote the greater good over narrow self-interest. More directly, he also served as a member of the Philadelphia L&I Review Board, giving considerable time and effort to assist the workings of the City in a largely unseen and unglamourous way.

Outside of the affairs of government, Jesse also devotes himself to purely charitable matters in diverse organizations. He served as a Board Member for the Enterprise Center, a non-profit established to promote woman-owned and minority-owned entrepreneurship and economic justice. He has also served as a Board Member of the Michael P. Donatucci Foundation, dedicated to the prevention of adolescent depression and suicide, tragically named after a family friend for whom such efforts fell short.



SUSTAIN
REALTY

While I understand that the question of Jesse's guilt has already been decided, I respectfully request that you grant the greatest degree of leniency possible in his sentencing.  I believe that his errors arose primarily from poor judgement rather than malicious intent, and when confronted with these errors he offered complete cooperation to the government.  It is also my understanding that his assistance has been valuable in prosecuting other individuals.  Further, given the purely financial nature of Jesse's offense and his active and ongoing efforts to provide restitution to those harmed, I believe that it would be a poor use of public resources to incarcerate him, causing both unneeded expense and interrupting his ability to continue providing restitution.

Given the concrete examples of Jesse's character, aside from this narrow matter, combined with the significant punishment that a criminal conviction alone represents given his profession, I ask that you look favorably on this request for leniency and hand down a sentence that will not unduly harm Jesse's future prospects and ongoing ability to have a positive impact in his community.

Kind regards,

W. Walker Robinson

# ADAM M. RAHN

1831 GREENWOOD ROAD ALLENTOWN, PA 18103 | (610) 453-7733 | ADAM.M.RAHN@GMAIL.COM

August 28, 2022

The Honorable Anita B. Brody
7613 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106
Courtroom 7-B

Re: Character Letter for Jesse Cohen

Dear Judge Brody,

I have known Jesse Cohen as a good friend for thirty years. I was both troubled and surprised to hear about his recent case as he has always been rather a solid person. It is for this reason I am happy to write a letter of reference for Jesse regarding this matter. I understand the seriousness of this matter, however, hope the court will show some leniency.

Jesse has always been an upright character in the community. We met the summer before his freshman year of high school working at the JCC Kaiserman in Wynnewood, PA, and learned he would be attending the same high school I was enrolled, the Central High School of Philadelphia. Later, I was pleased to learn he would transfer from Penn State University to the University of Pittsburgh, where we both graduated. Jesse has always been there for me in our friendship, especially during my recovery from a foot injury I suffered in 2019. I can always count on Jesse as he has been a good friend over the years.

While it is unfortunate that Jesse has made some bad decisions, thus resulting in this case, it comes to no surprise that he is ready to accept responsibility for his actions. I believe that as we move forward, he will emerge as a better person. In short, Jesse expressed deep sense of remorse in making such a serious mistake and I believe in his ability to pay his debt to society.

It is my sincere hope the court takes this letter into consideration at the time of sentencing. Despite the current case, I still believe Jesse Cohen to be an honorable individual, a valuable member of society, and a good human being.

Respectfully,

Adam Rahn

# Dr. Lloyd Long

12402 Ventura Blvd., 2ⁿᵈ Floor, Studio City, CA 91604  818-331-1131

Email: laura@drlauracalnan.com  Website:  www.drlauracalnan.com

November 1, 2022

To Whom It May Concern:

I am writing this letter on behalf of J. Cohen (DOB 10/17/79) who I have been treating in psychotherapy since 12/2020 for Major Depressive Disorder and Generalized Anxiety Disorder.  The purpose of this letter is to describe the conditions that contributed to the Patient's problems and demonstrate the changes he has made.

Mr. Cohen came to me seeking to attempt to overcome a lifetime of depression including suicidal ideation and to manage his anxiety.  The Patient was embarrassed and ashamed as he described his legal situation and wanted to understand his behaviors that lead to it and make changes in order to genuinely change his life.  For over 20 months in the course of treatment, PsyD and Patient explored the compounding adverse childhood events (ACE) including emotionally detached parents, identifying as a young, gay person at a time, in a place, and in a family system where it wasn't acceptable, which developed into their presenting problems prompting psychotherapy. These ACE's engendered various negative self-appraisals and lowered self-esteem for the Patient, which they attempted to cope with through maladaptive coping methods that are often correlated with depression and suicidal ideations, that PsyD and Patient explored during this course of treatment.

Understanding this was crucial to aiding the Patient in making sense of his behaviors and choices.  He was able to identify that he was attempting to fill a void within himself and sense of loneliness through his career, objects and experiences.   He confided that he was suicidal and thus struggled to actually be able to visualize a future for himself and so couldn't see a way out of this, thought, feeling and behavior loop so he kept repeating the same behaviors over and over and getting into ever more debt that further triggered his depression and hopelessness.

Mr. Cohen asserted that during this time, while he was suicidal and creating an existential end for himself, that he also had some deep inner sense of self-preservation that urged him to pick up and move from Pennsylvania to California.  However, he chastised himself for not being able to implement the behavioral changes necessary and expressed not understanding why he needed to move in order to stop the spiral he was in.

PsyD helped the Patient to explore why he felt he needed to leave his home in order to ultimately change. When it was framed within the analogy of an alcoholic that may need to leave people, places and things in order to recover and start over the Patient was able to begin to implement a change in how he views himself and develop healthy ways of coping with his low self-worth and make meaningful changes.

Treatment involved weekly dynamic and pedagogical conversations where PsyD applied active listening, empathic support, psychoeducation, and the development of adaptive coping strategies. Adaptive coping techniques were developed and applied in place of maladaptive patterns, and the Patient was redirected to apply positive affirmations, challenge negative self-appraisals, and increase their self-esteem overall.

Mr. Cohen has gained a deeper understanding of his emotions and mental processes allowing him to develop better coping mechanisms and make better choices.  He is actively choosing alternative, reframed beliefs and



behaviors when he feels depressed such as focusing on health and wellness, engaging in physical exercise like outdoor activities, as well as creative arts activities and donating his time to a specific charity and is accepting greater responsibility for the choices he makes.

Sincerely,
Dr. Laura Calnan, PsyD.
Lic.# PSY24626



**Saman Lashkari, MD**
Internal Medicine

October 24, 2023
Re: Jesse Cohen (Date Of Birth: 10/17/79)


To Whom It May Concern:


Jesse Cohen is a patient who has been part of my medical practice since April 17th of 2020.  I am a Board Certified Internal Medicine Physician specialist who acts as Jesse's concierge and primary physician.  I completed my Medical Residency and Fellowship at UCLA Medical Center and have been practicing Internal Medicine in Tarzana since November of 2020.  I have been treating Jesse for the following medical conditions including Pelvic Floor Dysfunction with secondary Interstitial Cystitis, Gastroesophageal Reflux Disease, Irritable Bowel Syndrome-Diarrhea, with Facial Migraines.  The overall prognosis for these conditions are good, however, they can flare up and have flared up from time to time and require close and routine monitoring to ensure that they are managed.  I see Jesse generally every 2 to 3 months to help stay on top of and managed all of his conditions given their likelihood to flare up intermittently.  All of the above conditions are triggered by stress and anxiety which can aggravate his bladder, gastrointestinal and migraine symptoms.  He is need of botox injections indicated for his facial migraines every 3 months.  He is given Uribel as need for his bladder symptoms and a series of exercises to perform routinely for his pelvic floor dysfunction along with mindfulness and stress reduction techniques.  He is seen by a Gastrointestinal specialist: Dr. Daisy Lankarani intermittently for his gastroesophageal reflux disease and irritable bowel syndrome-diarrhea along with need to take Imodium, sucralfate, omeprazole and dicyclomine as needed.  Of utmost importance, recommendations have been given to control and minimize his external stressors as well.  A flare up of any of his above conditions could require emergency medical attention if moderate to severe enough.  In my medical opinion, external stress and lack of ready access to his specialists can create and trigger additional risk of exacerbating his conditions.

Please take this into serious consideration and don't hesitate to reach me for any concerns or questions you may have.


Sincerely,


Saman Lashkari   M.D.

18840 Ventura Boulevard
Suite 207
Tarzana, CA 91356

T 818.654.8100
F 818.757.1531

drlashkari@mdvip.com
mdvip.com/SamanLashkariMD